**ROSELINE D. FERAL**
Attorney at Law
State Bar No.128788
444 West "C" Street
Suite310
San Diego, California 92101
Telephone (619) 232-1010
Fax (619) 231-2505

Attorney for Defendant
**JESUS CARO-BRACAMONTES**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**(HON. JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 08CR0536-JLS |
| Plaintiff, | **NOTICE OF MOTIONS AND MOTIONS TO:** |
| vs. | **1. DISMISS THE INDICTMENT DUE TO INVALID DEPORTATION AND REMOVAL;** |
| JESUS CARO-BRACAMONTES, | **2. DISCOVERY AND NOTES PRESERVATION;** |
| Defendant. | **3. AND FOR LEAVE TO FILE FURTHER MOTIONS AND EXHIBITS.** |

**STATEMENT OF THE CASE**

On February 2, 2008, Defendant was arrested and charged with violation of Title 8, U.S.C., Section 1326 . On March 4, 2008, Defendant was arraigned on an indictment charging him with violation of the same United Sates Code, § (a) and (b).

Motions hearing is currently set for April 11, 2008, at 1:30 p.m.

**STATEMENT OF FACTS**

On February 2, 2008, at approximately 9:30 p.m., JESUS CARO-BRACAMONTES (hereafter referred to as BRACAMONTES) applied for admission into the United Sates from Tijuana, Mexico at the San Ysidro, California Port of Entry through the vehicle primary lans. BRACAMONTES was the rear passenger of a beige 1996 Lexus. Driving the vehicle was

1

1  BRACAMONTES' brother, BENIGNO CARO-BRACAMONTES (hereafter referred to as
2  BROTHER) and his wife, EVERILDA LOPEZ (Herafter referred to as LOPEZ), was in the front
3  passenger seat.  During primary inspection before a Customs and Border Protection (CBP) officer,
4  BRACAMONTES' Permanent Resident Card (I-551) was presented on his behalf.  The primary
5  officer researched the I-551 card through the computer database and received a match to his query.
6  The vehicle and its passengers were escorted into the secondary inspection area.
7        In secondary, BRACAMONTES was determined to be a Mexican national "with no
8  entitlements to enter or reside in the United Sates".  BRACAMONTES' identity was later confirmed
9  through Immigration and FBI records.
10       According to the Immigration Service records including the Deportable Alien Control System
11 (DACS), BRACAMONTES was ordered deported, excluded or removed from the United States by
12 an Immigration Judge on or about February 2, 2007.  BRACAMONTES was physically removed
13 from the United Sates on or about June 4, 2007, via Nogales, Arizona.  According to the agents,
14 Immigration Service records contained no evidence that BRACAMONTES had applied for or
15 received permission from the United Sates Attorney General or the Secretary of the Department of
16 Homeland Security to re-enter the United States.
17       Subsequent defense investigation has revealed that : on June 2, 2007, BRACAMONTES'
18 immigration attorney JAEHOH SUH (SUH) had filed and served on the government a "Petition for
19 Review; Emergency Request for Stay of Removal" in case number A 92-070-309 before the United
20 States Court of Appeals for the Ninth Circuit, U.S. Court of Appeals Docket Number 07-72193 . The
21 complete copy of the proceedings will be provided to the Court once counsel has reviewed the A-
22 file.  In the Petition for Review, SUH expressly requested a stay pursuant to the Court's General
23 Order 6.4 which created a temporary stay of removal immediately upon filing. On June 4, 2007, the
24 United States Court of Appeals issued a letter to SUH acknowledging receipt of the Petition for
25 Review and Emergency Request for Stay of Removal. In that letter, counsel for both sides  were
26 given certain pleading deadlines for the hearing on the BRACAMONTES' Petition.
27       BRACAMONTES was physically removed from the United Sates late at night of June 4,
28

2

1  2008- after the Court of Appeals and the government's attorney had received the Petition For Review
2  and Emergency Request for Stay of Removal. Subsequently, the Court of Appeals for the Ninth
3  Circuit issued an Order to Show Cause to the government to explain why BRACAMONTES was
4  removed in violation of its stay of removal order.  Such hearing is pending before the U.S. Court of
5  Appeals for the Ninth Circuit.
6       Subsequently, on March 21, 2008, BRACAMONTES' state conviction forming the basis for
7  his deportation order entered on February 7, 2007, was vacated based on the Constitutional ground of
8  Ineffective assistance of Counsel depriving BRACAMONTES of his rights under the Sixth
9  Amendment and Due Process Clause of the United States Constitution..  Copies of the Court
10 Proceeding on March 21, 2008, in Rancho Cucumanga Superior Court will be provided to the Court
11 once present counsel receives them.  SUH had previously attempted to invalidate the state court
12 conviction forming the basis for the deportation order prior to the deportation proceeding on
13 February 2, 2007. He had set the case on calendar in state court but BRACAMONTES had not been
14 produced because of his incarceration with the immigration authorities.

## I.

## THE COURT MUST DISMISS THE INDICTMENT BECAUSE BRACAMONTES'DUE PROCESS RIGHTS WERE VIOLATED AT THE UNDERLYING DEPORTATION PROCEEDINGS

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998).  A defendant such as BRACAMONTES, who is charged with illegal reentry under section 1326, has a Fifth Amendment right to attack his removal order collaterally because the removal order serves as a predicate element of his conviction. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."). See also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004)

(citing Zarate-Martinez and Mendoza-Lopez for these principles).

### A.   The 2007 Deportation May Not Serve as the Basis of a § 1326 Prosecution

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 837-838 (1987)).  To "sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." Id.

### B.   BRACAMONTES Was Prejudiced By the Defects At His 2007 Deportation and Removal Proceedings.

To show prejudice, BRACAMONTES need not show that he would actually have been granted relief; he need only show that he had a plausible legal challenge to his removal order. Ubaldo-Figueroa, 364 F.3d at 1050.  As the Ninth Circuit recently reiterated, prejudice means that "the outcome of the proceedings *may have been affected* by the alleged violation." Zolotukhin v. Gonzales, 417 F.3d 1073, 1076 (9th Cir. 2005) (emphasis in original).  "The standard does not demand absolute certainty; rather prejudice is shown if the violation '*potentially* . . . affects the outcome of the proceedings.'" Id. at 1077 (citing Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002)) (emphasis in original).  For example, in Zolutukhin, the government argued that the petitioner lacked good character and thus would not have been able to prevail on his claims.  Id.  The Ninth Circuit rejected this argument, noting that "even a petitioner with purportedly bad character and possibly a weak case has a right to a fair hearing."  Id.  Because the outcome of the case may have been different absent the due process violations, the case was remanded for a new hearing.  Id. BRACAMONTES meets the Ninth Circuit's test.

**1.     BRACAMONTES is Exempt From § 1326(d)'s Exhaustion Requirement**

Normally, a defendant charged with violating § 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. *See* 8 U.S.C. 1326 (d)(1). BRACAMONTES filed a timely Petition For Review and Requested an Emergency Stay of Removal. BRACAMONTES was removed despite the Court's granting an automatic temporary stay of removal pursuant to Court's General Order 6.4. BRACAMONTES was deprived of his right to appeal by the government's removal in violation of the Court's order staying it. Hence, government action deprived BRACAMONTS of his right to appeal the deportation order. Such a person who is eligible for relief from removal and who is deprived of his right to appeal by government action should be "exempted from the exhaustion requirement" of § 1326(d). United States v. Ortiz-Lopez, 385 F.3d 1202, 1204, 1204 n.2 (9th Cir. 2004) (quoting United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047, 1049-50 (9th Cir. 2004)).

**2.     BRACAMONTES was Denied Judicial Review**

Similarly, the removal of BRACAMONTES in violation of the automatic stay of removal pursuant to Stay deprived him of an opportunity to seek judicial review of the IJ's removal order. Ortiz-Lopez, 385 F.3d at 1204, 1204 n.2; Ubaldo-Figuroa, 364 F.3d at 1049-50.. A defendant seeking to collaterally challenge a deportation under § 1326(d) must show that he was improperly denied the opportunity for judicial review. *See* 8 U.S.C. § 1326(d)(2). An IJ's failure to inform a person of their eligibility for voluntary removal satisfies the requirement that a defendant be denied his opportunity to seek judicial review. Ortiz-Lopez, 385 F.3d at 1204, 1204 n.2; Ubaldo-Figuroa, 364 F.3d at 1049-50.

Additionally, BRACAMONTES was not allowed to litigate his appellate rights and was not given the opporunity to accept a voluntary return which he would have been otherwise entitled to.

### 3. BRACAMONTES' Deportation Was Fundamentally Unfair

To successfully challenge the government's use of a prior removal in a § 1326 prosecution, a defendant must show that the entry of that removal order "was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "An underlying removal order is 'fundamentally unfair' if: '(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ortiz-Lopez, 385 F.3d at 1204 (quoting United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998)).

#### a. BRACAMONTES was eligible for voluntary departure.

A voluntary departure allows a person in removal proceedings to depart the United States at their own expense before the end of those proceedings. There are two different types of voluntary departure, one that is available to an alien prior to the completion of removal proceedings under 8 U.S.C. § 1229c(a)(1) and one that is available to an alien at the conclusion of proceedings under 8 U.S.C. § 1229c(b).

A person is eligible for a "fast-track" voluntary departure under 8 U.S.C. § 1229c(a)(1) if : 1) they demonstrate the will and ability to depart the United States and pay his own passage to the country of destination, and 2) they are "not deportable" as an aggravated felon. This statute does not require a showing of good moral character. 8 U.S.C. § 1229c(a)(1)

#### b. BRACAMONTES suffered prejudice at his removal hearing.

BRACAMONTES suffered prejudice as a result of above due process violation. In Camacho-Lopez, the defendant was erroneously placed in deportation proceedings for being an aggravated felon when his predicate offense did not fit the definition of an aggravated felony. The Court held that, "Mr. Camacho-Lopez was removed when he should not have been and clearly suffered prejudice." Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006). (emphasis in original). Similarly, BRACAMONTES clearly suffered prejudice when he was removed prematurely while his Petition for Review and Emergency Request for Stay of Removal was pending.

### C.   Summation

BRACAMONTES' due process rights were violated at his deportation and removal hearing in 2007. He suffered prejudice as a result of that due process violation. The government may not therefore use BRACAMONTES' 2007 deportation as a basis for its prosecution. As there is no other removal order on which the government may rely, BRACAMONTES requests that this Court dismiss the indictment.

## II.

## MOTION TO COMPEL DISCOVERY

### A.   Defendant is Entitled to Discovery of Defendant's Statements

Pursuant to Rule 16(a)(1)(A), Brady v. Maryland, 373 U.S. 83 (1963), and the Fifth and Sixth Amendments to the United States Constitution, defendant requests the disclosure of all statements, written, oral, and recorded, made by defendant which are in the possession, custody, or control of the government or which by the exercise of due diligence may become known to the government, regardless of to whom the statements were made.

This includes all rough notes of government agents which include statements of defendant.

A defendant has a right to inspect these requested statements. This has been extended to permit discovery of written summaries of the defendant's oral statements contained in handwritten notes of government agents. See United States v. Johnson, 525 F.2d 999(2d Cir. 1975); United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982).

### B.   Defendant is Entitled to Disclosure of any Prior Similar Convictions or Prior Similar Acts

Federal Rule of Criminal Procedure 16(a)(1)(B) provides that, upon request of the defendant, the government shall furnish to the defendant a copy of defendant's prior criminal record, if any, as is within the possession, custody, or control of the government. Defendant makes this request.

The defendant also requests that the government provide discovery of any prior similar acts

which the government will intend to introduce into evidence pursuant to Federal Rule of Evidence 404(b). The defendant must have access to this information in order to make appropriate motions to exclude the use of such evidence at trial. See United States v. Cook, 609 F.2d 1174 (9th Cir. 1985).

The defendant requests a pretrial conference on the morning of trial in order to resolve any issues raised by the government's intention to introduce such evidence.

**C.    Defendant is Entitled to Examine any Documents, Tangible Items, and the like which are in the Possession, Custody, or Control of the Government**

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(C) and Brady v. Maryland, 373 U.S. 83 (1963), the defendant requests the opportunity to inspect and copy all books, papers, documents, photographs, and tangible items which are in the possession, custody, or control of the government and which are material to the preparation of the defense intended for use by the government as evidence in the case in chief. The defendant further make these requests pursuant to Brady v. Maryland on the ground that this evidence may provide exculpatory information that is beneficial to the defendant in the defense against the charges in the indictment.

The request includes, but is not limited to the following: All search warrants and their accompanying affidavits, as well as the opportunity to inspect the results of all searches conducted by law enforcement officers pursuant to warrants and/or otherwise (this request includes the searches of all residences, businesses, automobiles, and other locations regarding this case); all tape-recorded conversations, closed circuit television surveillance of suspects, telephone toll analysis, bank records and financial documents involving the case. This request also includes the results of all follow-up investigations regarding the above-requested evidence. These requests are made pursuant to Federal Rule of Criminal Procedure 16 and Brady v. Maryland, 373 U.S. 83 (1963).

**D.    Due Process Exculpatory Information**

Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Fifth and Sixth Amendments to the United States Constitution, defendant requests disclosure

of all information of whatever form, source, or nature which tends to exculpate defendant by indicating innocence, contradicting the government's theory of the case, and impeaching the credibility of potential government witnesses. This request specifically includes all co-conspirator statements, indicted and unindicted, all third party witness statements interviewed by government agents and/or of which the government has custody dominion, or control. This request includes all recorded conversations, electronic, mechanical, stenographic, or otherwise, of all co-conspirators, indicted and unindicted, all defendants, and all potential witnesses which statements are relevant to the subject matter charged in the indictment and are in the possession, custody, or control of the government. It also includes such statements within the meaning of 18 U.S.C. Section 3504.

Defendant requests the government to provide all statements made by all potential witnesses, including the identity, whereabouts, and statements of defendant's two companions. The term "statements" as used in this request includes tape-recorded conversations, rough notes, correspondence, memoranda, or reports prepared directly by such persons and/or by any government agents (of any government entity) or attorneys. It includes all Grand Jury testimony, as well as previous in-court and trial testimony. It includes all government debriefings of all potential witnesses. If such statements were given orally to any government agent, defendant requests that they be committed to writing and produced forthwith.

Defendant requests access to prior testimony of all government witnesses. Two statutory provisions and one major constitutional provision must be considered in resolving any questions involving compelled disclosure of government witness statements. First, the Jenks Act, 18 U.S.C. Section 3500, regulates disclosure of witness statements, as defined by the Act, and prohibits any order requiring production prior to the completion of direct examination of the witness. Second, Federal Rule of Criminal Procedure 16(a)(2) excepts from the operation of the general discovery provisions of Rule 16 those reports, memoranda, and internal government documents generated during the course of an investigation into the case, except as provided in the Jencks Act. The Rule does not prohibit the

disclosure of such items, but states, merely, that it does not authorize them. Third, an overriding principle requires the government to disclose all exculpatory material in its possession. See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Defendant makes this request under all three provisions.

As part of this request defendant also requests the name, address and telephone number of each person the government intends to call as a witness at trial. Additionally, defendant requests the name, address and telephone number of each person who was present during or had material information regarding, any act or transaction charged in the indictment, whether or not the government intends to call such a person as a witness at the trial. The request includes a list of all witnesses appearing before the Grand Jury in connection with this case. Advance disclosure of witnesses is essential if defendant's Sixth Amendment right to effective assistance of counsel is to have any real meaning. This request is properly before the court. See <u>United States v. Cadet</u>, 727 F.2d 1453, 1469 (9th Cir. 1984); <u>Wilson v. Rose</u>, 366 F.2d 611 (9th Cir. 1966).

Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972); <u>Davis v. Alaska</u>, 415 U.S. 308 (1974), defendant makes the following request for:

1) All impeaching evidence such as prior records, prior inconsistent statements, evidence for bias, interest, or motive, and prior uncharged bad acts of all the potential witnesses in this case;

2) All formal or informal promises to reward a witness, such as promises of probation, promises of monetary gain, payment of living or medical expenses, payment for transportation or promises of witness protection;

3) All information relating to alcohol or drug abuse treatment of all potential witnesses, and all information relating to drug uses of each potential witness;

4) All information relating to the use of aliases or fictitious names by each potential government witness;

5) All information relating to prior acts of all potential witnesses which are probative of his

character for untruthfulness within the meaning of Federal Rule of Evidence 608(b); and,

6) All information relating to contradictory statements made by all potential government witnesses or agents or representative of any law enforcement entity or other persons.

## E. Request for Expert Witness Information

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), defendant requests to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments which are within the possession, custody or control of the government, the existence of which is know, or by the exercise of due diligence may become known to the attorney for the government, and which reports are material to the preparation of the defense or intended for use by the government as evidence in their case in chief at trial.

In regards to this expert information, defendant requests all rough notes, memoranda, correspondence and reports setting forth the results, whether positive or negative, of all expert analysis regarding fingerprints or any of the seized evidence, scientific analysis of any of the recorded conversations and/or closed circuit television surveillance. In regards to this latter request, defendant requests the opportunity to perform independent scientific analysis on all recorded conversations and all closed circuit television surveillance conducted in this case.

## F. Defendant is Entitled to Government Disclosure of the Evidence it Intends to Use Against Defendant at Trial

Pursuant to Federal Rule of Criminal 12(d), defendant requests that this court order the government to disclose the evidence it intends to use against defendant at trial. This request includes any evidence which defendant may be entitled to under Federal Rule of Criminal Procedure 16 subject to any relevant limitation prescribed by that rule.

According to the Assistant United States Attorney prosecuting the case, Defendant is under investigation for other crimes, such as: smuggling aliens where a death resulted. To date no discovery has been turned over of the on going investigation. Defense is requesting such information as soon as

possible so that a meaningful decision can be made as to whether or not there is sufficient grounds for "cooperation".

**G. Defendant is entitled to discovery of the immigration file as the prior deportation is an element of the instant offense.**

Defense has received some discovery in this case. Defense has not yet received the tapes of the deportation proceedings. In addition, Defense has received partial discovery of the A-file.

Defense needs the opportunity to examine the A-file in its entirety. First, the A-file will have documentation concerning the alleged deportation and the subsequent history. Defendant is entitled to assert as an affirmative defense that the prior deportation was invalid because defendant may have been eligible for extra-ordinary relief from deportation. The documents in the A-file will help determine the validity of such a defense.

Furthermore, the government will likely try to show, at trial, that a government officer searched the A-file and did not find an application by Defendant for permission to enter the United States. The Certificate of Non-existence will state that if Defendant had applied for permission, that application would definitely be in the A-file; because if an application is not in the A-file, then Defendant must not have applied for permission to enter the United States.

Although the certificate might be admissible, the question of how thorough the search of the A-file was is and should be open to cross-examination. *United States v. Sager,* 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation"). Defendant should be able to search his A-file to see whether an application exists. Moreover, Defendant should be able to verify whether other documents that would ordinarily be in the A-file are "non-existent", that is missing from his A-file. It is a defense that the government lost Defendant's application as it has other documents.

Hence, Defendant moves for the production of the following discovery. This request includes discovery of which the government attorney knows, and discovery of which the government attorney may become aware through the exercise of due diligence. See Fed. R. Crim. P.16.

## III.

## PRESERVE ROUGH NOTES

Defendant hereby moves this court to order:

1) Preservation and production of rough notes of government witness interviews and the interrogatories of defendant; and,

2) Sanctions for destruction of any of the rough notes including the exclusion of any witness' testimony as to which the rough notes have been destroyed.

The grounds for this motion are that rough interview notes must be preserved and disclosed to the defense under the Federal Rule of Criminal Procedure, Rule 16 and 18 U.S.C. Section 3500.

## IV.

## LEAVE TO FILE FURTHER MOTIONS AND SUPPLEMENTAL EXHIBITS

A continuance may be warranted in this matter due to the fact that further discovery is required in order to adequately prepare motions; at this date, some discovery has been provided. Accordingly, defendant prays for leave to file further motions should such motions be warranted requests leave to file supplemental exhibits as they become available.

Dated: _____                             Respectfully submitted,


                                                /s/ Roseline D. Feral
                                                ROSELINE D. FERAL
                                                Attorney for JESUS CARO-BRACAMONTES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28